UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMARR FRANKLIN MURPHY-ELLERSON,

                        Petitioner,                      Case Number 15-14103
                                                        Honorable David M. Lawson

v.

STEVE RIVARD,

                        Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lamarr Franklin Murphy-Ellerson has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his assault and firearms convictions and sentences. He alleges a variety of claims, none of which persuades the Court that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition will be denied.

I.

A Washtenaw County, Michigan jury convicted the petitioner of two counts of assault with intent to commit murder, two counts of assault with intent to do great bodily harm less than murder, possession of a loaded firearm in a vehicle, discharge of a firearm from a motor vehicle, discharge of a firearm toward a dwelling or occupied structure, carrying a concealed weapon, and possession of a firearm in the commission of a felony (felony firearm). The facts of the case were summarized by the Michigan Court of Appeals on direct appeal as follows:

> In December 2011, someone fired shots at home where several people had gathered for a party. The shooter fired at the home while driving past it. Matthew Lewis was hit in the leg as he was standing outside the home. Lewis was not able to identify the shooter or the car, but Amber King, another guest at the party, testified that she was in the kitchen when she saw Murphy-Ellerson pull up in a silver car, roll his window down, point a gun in her direction, and fire multiple shots. King stated that she had earlier had a confrontation with Murphy-Ellerson at a convenience store.

Murphy-Ellerson initially denied that he knew King and denied knowing about or being involved in the shooting. In a subsequent statement, he told a detective that he was in the car during the shooting, but was not the shooter. He later recanted and claimed that he was not in the car during the shooting.

The jury found that Murphy-Ellerson was the shooter and convicted him accordingly.

*People v. Murphy-Ellerson*, No. 312651, 2014 WL 2158171, at * 1 (Mich. Ct. App. May 22, 2014).

The petitioner was sentenced to concurrent prison terms totaling twenty to forty years, except that his conviction for felony firearm earned him an additional two-year consecutive sentence. The petitioner's conviction was affirmed on appeal. *Ibid.*; *lv. den.* 497 Mich. 947, 857 N.W.2d 37 (2014) (Table). However, the court of appeals vacated his convictions of assault with intent to do great bodily harm, as duplicative of the more serious offenses.

The petitioner filed a timely petition for habeas corpus, alleging the following grounds for relief:

I.      Right to present defense witness testimony was denied.

II.     Double Jeopardy violation.

III.    Fair trial denied by allegations of threats and payment offers by other parties.

IV.    Trial counsel was ineffective in failing to investigate and question a defense witness.

V.     Prosecutorial misconduct.

VI.    Erroneously scored state sentencing guidelines claims (offense variables 3, 4, and 13) are not reviewed on federal petitions for habeas corpus relief, and petitioner does not belabor the Court by presenting the same here after sentencing guideline issues were exhausted before the Michigan Supreme Court.

Pet. at 2. These are the same grounds raised by his attorney on direct appeal. The warden opposes the petition on the merits, and also raises certain procedural defenses, which need not be addressed

here.  *See Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (holding that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits") (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Because Murphy-Ellerson filed his petition after the AEDPA's effective date, its standard of review applies.  Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions."  *White v. Woodall*, 572 U.S. 415, ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 841 (6th Cir. 2017); *Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Even though the state appellate courts did not give full consideration to the petitioner's federal claims on appeal, AEDPA's highly deferential standard for reviewing a habeas petitioner's constitutional claims applies here. The petitioner must show that "the state court decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law' or involved an 'unreasonable determination of the facts.'" *Kelly v. Lazaroff*, 846 F.3d 819, 831 (6th Cir. 2017) (quoting 28 U.S.C. § 2254(d)). That standard applies "even when a state court does not explain the reasoning behind its denial of relief." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016). "Under

[*Harrington v. Richter*, 562 U.S. 86 (2011)], '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 99). There is nothing in this record that suggests a basis for rebutting that presumption. *See Johnson v. Williams*, 568 U.S. 289, 133 S. Ct. 1088, 1097 (2013).

## A.

The petitioner contends that the trial court trenched upon his right to present a defense by excluding testimony from the petitioner's stepfather that the state's sole eyewitness, Amber King, attempted to solicit or extort money from him in exchange for giving favorable testimony for the petitioner. His attorney objected to the exclusion of that testimony at trial on evidentiary grounds, but his appellate attorney couched the issue as a constitutional claim. The Michigan Court of Appeals reviewed and rejected the petitioner's claim so stated under a plain error standard because the petitioner did not characterize it in that way at the trial court. *People v. Murphy-Ellerson*, 2014 WL 2158171, at * 1-2. The court determined that the trial judge mishandled the evidentiary issue, but concluded that the error was harmless. It reasoned as follows:

> Here, the primary issue at trial was the shooter's identity and King was the only witness who could positively identify Murphy-Ellerson as the shooter. For that reason, this case largely turned on her credibility. Murphy-Ellerson's lawyer impeached King with inconsistencies in her trial testimony, preliminary examination testimony, and her statements to officers. His lawyer also solicited testimony from her that she had never called or texted Murphy-Ellerson's stepfather and asked him to pay her to tell the truth.
>
> Throughout the proceedings, Murphy-Ellerson's lawyer, the prosecutor, and the trial court discussed the admissibility of a videotape[1] of a text message that King allegedly sent to Murphy-Ellerson's stepfather. Initially, the court reserved ruling on the admission of the videotape until it had an opportunity to review it. Later,

Murphy-Ellerson's lawyer made an offer of proof regarding the substance of the videotape. When the court asked how the videotape was not hearsay, Murphy–Ellerson's lawyer responded that it was not being offered for the truth of the matter asserted. On the second day of trial, Murphy-Ellerson's lawyer noted that he was not going to seek admission of the videotape and would instead just ask Murphy-Ellerson's stepfather if he had received a communication from King. He indicated that the testimony would be for impeachment. However, after the prosecutor objected to the proposed testimony as hearsay, Murphy-Ellerson's lawyer did not reassert that the testimony was for impeachment.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Accordingly, if a statement is not offered to prove the truth of the matter asserted, then it is not hearsay. Here, even assuming that the stepfather's testimony was admissible impeachment testimony, any error in the trial court's decision to exclude it was harmless.

The defendant in [*People v.*] *Snyder*[, 462 Mich. 38; 609 N.W. 2d 831 (2000),] was charged with shooting a woman. *Snyder*, 462 Mich. at 39. The woman testified the defendant shot her after an argument and denied telling anyone that he shot her by accident. *Id.* Defense counsel attempted to solicit testimony that the woman told a witness the defendant had shot her by accident. *Id.* at 39-40. The testimony was excluded on hearsay grounds. *Id*. at 40. Our Supreme Court concluded that the testimony was erroneously excluded because it would have aided the jury in determining the woman's credibility. *Id.* at 44.

Similarly, the prosecution's case rested heavily upon King's testimony. However, unlike *Snyder*, Murphy-Ellerson's lawyer was able to effectively impeach King's story on cross-examination. Further, Murphy-Ellerson's statements to officers supported an inference that he was the shooter, especially his recanted comments that he was present at the shooting. The prosecutor also did not directly or indirectly refer to the precluded testimony during closing argument and rebuttal. *Cf. id.* at 45–46. Accordingly, on this record, we conclude that any error was harmless.

_____
[1]According to the prosecutor, the video was a VHS of a "cell phone with a text message on it . . . that [was] totally illegible ."

*Murphy-Ellerson*, 2014 WL 2158171, at * 2-3 .

A person accused of a crime has a constitutional right to present witnesses to establish a

defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388

U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("whether rooted directly

in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Rulings that exclude evidence from criminal trials do not violate the right to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Moreover, under the standard of review for habeas cases as enunciated in section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful defense evidence was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F. 3d at 511-12.

Here, the state court of appeals determined (correctly) that the trial judge fumbled the evidentiary ruling by excluding on hearsay grounds evidence that King tried to solicit money from the petitioner's stepfather in exchange for giving testimony that would help the defense case. That evidence certainly would have had *some* impact on King's credibility. But the court of appeals believed that the petitioner's defense was not compromised because there was plenty of other evidence that the jury could use to assess whether to believe King. The court determined that the evidentiary error was harmless, and therefore found no merit (albeit under a plain error review) in the contention that the petitioner was deprived of a defense.

The record confirms that view, which also fortifies the conclusion that the state court of appeals reasonably applied federal law. Defense counsel confronted King with a prior inconsistent statement describing the earlier confrontation with the petitioner. It occurred at a Dairy Mart. King testified at the preliminary examination that Douglas Norwood, known as "DD," was not present at the Dairy Mart during the earlier confrontation, but at trial she admitted that DD was there during the encounter. When pressed on whether DD was the one who threatened a woman there with a firearm, King denied it. But later at trial she conceded that she was not sure whether DD fought at the Dairy Mart or pulled a gun on someone. King admitted to defense counsel on cross-examination that the petitioner never got out of his car at the Dairy Mart or pulled out a handgun at the store. King also admitted that when the petitioner called her after their argument at Dairy Mart, he did not threaten anyone. King testified at trial that she saw smoke coming from the petitioner's gun during the drive-by shooting. Defense counsel pointed out that King never mentioned that fact during her preliminary examination testimony. And defense counsel confronted King with conflicting stories she gave over the amount of time that elapsed between the initial confrontation at the Dairy Mart and the shooting.

Defense counsel called other witnesses, who contradicted King's rendition of the earlier confrontation at the Dairy Mart. Kelly Hall testified that DD pulled a firearm on her. Defense counsel also called Rachel Jones, who likewise testified that DD pulled a firearm on a woman in the Dairy Mart parking lot. That testimony contradicted King's assertion at trial that DD never pointed a firearm at anyone at the Dairy Mart.

Evidence that King may have had a corrupt motive — when she offered to alter her testimony for money — may have been more dramatic, and perhaps even more effective at

undermining King's credibility. Nonetheless, the state court's determination that the evidence was cumulative, and the state court's error harmless, is entitled to deference here. On direct review, a constitutional trial error may be excused only if it "was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). But on federal habeas review, a petitioner may obtain relief only if his asserted error had a "substantial and injurious effect" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 631(1993); *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) ("*Brecht* is always the test, and there is no reason to ask both whether the state court 'unreasonably' applied *Chapman* under the AEDPA and, further, whether the constitutional error had a 'substantial and injurious' effect on the jury's verdict."). The petitioner has not shown that the exclusion of that evidence undermined confidence in the jury's verdict because the jury heard other evidence that allowed it to evaluate King's credibility adequately.

The state appellate court's conclusion — that the alleged error was harmless — was objectively reasonable, and the petitioner has no right to relief on his first claim.

## B.

The petitioner alleges in his second claim that his conviction of two counts of assault with intent to commit murder and two counts of assault with intent to do great bodily harm less than murder violated his right under the Double Jeopardy Clause. The charges related to the same acts and the same victims, and the lesser charges were subsumed by the greater charges. But that claim was resolved by the state court of appeals, when it vacated the great-bodily-harm convictions. Unless there is some lingering collateral consequence to the vacated convictions — and Murphy-Ellerson has identified none — the issue is moot and beyond the power of the Court to address. *Witzke v. Brewer*, 849 F.3d 338, 340 (6th Cir. 2017) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Federal courts may review only actual cases or controversies, U.S. Const. art. III, § 2, cl. 1, and therefore the Court "ha[s] no power to adjudicate disputes which are moot," *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quoting *Crane v. Ind. High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992)).  There must be an actual controversy at all stages of the case, not merely at the outset.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) ("[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

Because the petitioner received all that he was entitled by the state appellate court's action, his second claim affords him no right to relief.

## C.

The petitioner contends that his right to a fair trial was violated when King was permitted to testify that she had been threatened by the petitioner's family members.  The petitioner argues that such evidence is irrelevant and prejudicial, and the trial court erred by admitting it.

It is well established that "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  The petitioner has not identified such a fundamental error here.

Threats to a witness may be relevant to assess that witness' credibility.  *See Dorchy v. Jones*, 320 F. Supp. 2d 564, 578 (E.D. Mich. 2004) (citing *United States v. Pierson*, 121 F. 3d 560, 563 (9th Cir. 1997)); *see also Sadler v. Jabe*, 96 F.3d 1448 (Table), 1996 WL 506375, *1 (6th Cir. Sept. 4, 1996) (holding that testimony that habeas petitioner's father threatened witness was relevant to

witness's credibility and was properly admitted to rehabilitate her when her motive to testify was called into question). The Michigan Court of Appeals determined that evidence that King had been intimidated was relevant to her credibility as a witness, in order to rebut defense counsel's suggestion that King had attempted to solicit money from the petitioner's stepfather in exchange for favorable testimony. *Murphy-Ellerson*, 2014 WL 2158171, at * 3. That evidentiary ruling did not undermine the fundamental fairness of the petitioner's trial, and it therefore will not support a request for a federal writ of habeas corpus.

D.

The petitioner contends he was denied the effective assistance of trial counsel because his attorney failed to investigate Rachel Jones's background and better prepare for her testimony. The petitioner's appellate lawyer moved in the court of appeals to remand the case for an evidentiary hearing on this claim. In the motion, which was accompanied by an affidavit from Jones, counsel explained that although Jones testified at trial, she was only asked about events at the Dairy Mart store. Jones, however, apparently had more to say about witnessing the drive-by shooting at the residence. She testified in her affidavit that Douglas Norwood (DD) asked Amber King to lure the petitioner to the house so that DD could shoot him. Jones said that DD began shooting at the people in the silver car before anyone from the car fired a gun. Appellate counsel alleged that had Ms. Jones been questioned about her observations at trial, her testimony could have formed the basis for a defense of self-defense or defense of others, and that trial counsel was ineffective when he did not pursue that line of questioning.

The Michigan Court of Appeals denied the petitioner's motion to remand because the petitioner "failed to offer any proof that his attorney's trial preparation were [*sic*] inadequate with

regard to preparing a defense based on Rachel Jones' account of the offense at the time of trial." *People v. Murphy–Ellerson*, No. 3121651 (Mich. Ct. App. Nov. 25, 2013). The petitioner later raised his claim again in his appellate brief, but the court of appeals again rejected the claim on the basis of its earlier ruling. *Murphy-Ellerson*, 2014 WL 2158171, at * 4.

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare, because the standard for obtaining habeas corpus relief "is 'difficult to meet.'" *Woodall*, 134 S.Ct. at 1702 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (quoting *Richter*, 562 U.S. at 102)). The standard is "all the more difficult" on habeas corpus review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Ibid.*

The factual substance of the petitioner's claim appears to be based on Jones's affidavit. There is nothing in the record, however, stating that trial counsel did not interview Jones or was unaware of the information she belatedly put forth in her affidavit. And there is nothing to suggest that trial counsel failed to question Jones at trial out of neglect or inadequate preparation. To the contrary, there is reason to conclude that counsel's questioning was a product of his trial strategy, formed when considering all the evidence that likely would (and did) come out at trial.

Defense counsel called Jones to testify about the Dairy Mart incident, and she offered testimony that contradicted King's assertions. The attack on King's credibility was important to the defense that the petitioner was not the shooter, a position taken from the outset, which dovetailed with all three of the petitioner's statements to the police. And trial counsel also used the Dairy Mart incident to suggest that DD was the actual shooter. The petitioner now is critical of defense counsel for not developing a self-defense theory, which is how Jones's additional information may have fit in. But a self-defense claim at trial would have been inconsistent with defense counsel's strategy of arguing that the petitioner was *not* the shooter. Under Michigan law, "[a] finding that a defendant

-13-

acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally but that the circumstances justified his actions." *Taylor v. Withrow*, 288 F.3d 846, 853 (6th Cir. 2002) (quoting *People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10, 19 (1990)).

The petitioner asks the Court to presume that counsel did not make a strategic choice, and his conduct was the product of neglect. But the prevailing law vectors the presumption in the opposite direction. Where two reasonable but divergent paths are presented, reviewing courts studiously avoid second-guessing counsel's choices. In fact, *Strickland* requires a reviewing court to presume that defense counsel's conduct was not the product of deficient performance. "To counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). A habeas court not only must give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he did. *Cullen,* 563 U.S. at 196.

The reasonableness of counsel's strategic choice is bolstered here by the petitioner's statements to the police. He told investigators several times that he was either not present at the time of the shooting, or was at most, a passenger in the car who did not participate in the shooting. Counsel's decision to pursue an innocence defense instead of self-defense was a reasonable trial strategy, and the petitioner, therefore cannot show deficient performance. *See Poindexter v. Mitchell,* 454 F. 3d 564, 573-75 (6th Cir. 2006) (holding that counsel's performance was not

deficient by failing to pursue a "crime of passion" defense, where such a defense would have been inconsistent with the petitioner's continued insistence that he had no involvement in the crime).

The petitioner is not entitled to habeas relief on his fourth claim.

E.

The petitioner next contends he was denied a fair trial because of prosecutorial misconduct, where the prosecutor made incorrect statements during closing argument about the law of transferred intent, expressed his opinion about witness credibility, made statements that invaded the province of the jury, and characterized the petitioner as having a propensity to commit crime. Those acts, says the petitioner, denied him a fair trial. The state court of appeals reviewed this claim for plain error and rejected it. *Murphy-Ellerson*, 2014 WL 2158171, at * 5-6.

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas case. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). When the issue is the prosecutor's remarks, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam). In *Darden*, the Supreme Court stated:

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642.

*Darden*, 477 U.S. at 181.

The petitioner contends that the prosecutor misled the jury by making the following statements about the doctrine of transferred intent:

> What's important for you to consider, especially as it relates to the victim . . . is this idea, this legal idea that I mentioned for a moment in my opening about transferred intent. Transferred intent means — and, again, the Judge will explain it to you. But transferred intent means that if I try and shoot him, but by mistake I shoot you, I am just as guilty as if I would have shot him. It's . . . a fairly simple concept.
>
> Really, all it means is you can't say I didn't do anything wrong because I missed, because I accidentally shot somebody else. If I had the intent to kill somebody but I shot somebody else, I'm guilty. If I had the intent to do great bodily harm to somebody but I missed and shot somebody else, I'm guilty. That's what transferred intent means.

*Murphy-Ellerson*, 2014 WL 2158171, at * 6.

The Michigan Court of Appeals rejected the petitioner's claim because the prosecutor's comments were an accurate statement of Michigan law regarding the doctrine of transferred intent. *Ibid.* This Court agrees. Under the doctrine of transferred intent, a "general intent to kill need not be directed at an identified individual or the eventual victim." *People v. Abraham*, 256 Mich. App. 265, 270, 662 N.W. 2d 836 (2003); *see also People v. Lawton*, 196 Mich. App. 341, 350-51, 492 N.W.2d 810 (1992). Here it was unnecessary for the prosecution to show that the petitioner intended to kill any specific persons to sustain the petitioner's convictions for assault with intent to murder. The prosecutor's argument was not improper because it did not misstate the law regarding the transferred intent doctrine.

The petitioner also contends that the prosecutor improperly vouched for the credibility of the witnesses, expressed a personal opinion as to the petitioner's guilt, and invaded the province of the jury, when he made the following remarks:

> But what's even more important than that, and I would suggest it's this. *We are suggesting, the charges suggest that we believe that this defendant tried to kill people. . . .* Not just shoot up the house in some random fashion to scare somebody, but tried to kill.

> *Now, why do I say it's important* as far as what happened to [the shooting victim]? It's important *because if [he] is shot with the very first shot and goes down, and then at least four more shots are fired in the same direction, somebody's trying to kill. They're not trying to warn. They're not trying to scare.* When you shoot somebody, and they go down, and you keep going boom, boom, boom, boom right there, you are trying to kill. I don't think there's any other conclusion that can be reached from that scenario.

*Murphy-Ellerson*, 2014 WL 2158171, at * 6.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (citations omitted). However, a prosecutor may argue that the jury should arrive at a particular conclusion based upon evidence in the record. *Ibid.* "Improper vouching occurs when a jury could reasonably believe that a prosecutor was indicating a personal belief in a witness' credibility." *Taylor v. United States*, 985 F.2d 844, 846 (6th Cir. 1993). Improper vouching also occurs when the prosecutor argues evidence not in the record, *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992), or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing any perceived prestige of the office of the prosecutor behind the witness, *see United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). Generally, improper vouching involves either blunt comments, *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992), or comments that imply that the prosecutor has special knowledge of facts not presented to the jury or of the credibility and truthfulness of witnesses and their testimony, *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994).

None of that happened here.  The prosecutor's comments were based on the record evidence, not on his personal belief concerning the evidence.  The prosecutor did not assert or imply that he had any special knowledge apart from the record evidence to believe that petitioner was guilty or the prosecution witnesses were testifying truthfully.  The petitioner has not shown that the prosecutor expressed a personal belief in his guilt or vouched for the credibility of the state's witnesses.  Moreover, the court instructed the jury that the prosecutor's arguments were not evidence, and the court instructed the jury on the factors to consider when evaluating the credibility of the witnesses' testimony.  *See Byrd v. Collins,* 209 F. 3d 486, 537-38 (6th Cir. 2000).  The petitioner is not entitled to relief on his fifth claim.

F.

The petitioner contends that Offense Variables (OV) 3, 4, and 13 of the Michigan Sentencing Guidelines were incorrectly scored.  Claims that arise out of a state trial court's sentencing decision are not cognizable upon federal habeas review unless the petitioner can show that the sentence exceeded the statutory limits or is wholly unauthorized by law.  *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001); *see Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *see also Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue, which is not cognizable on federal habeas review).  The petitioner's sentence is within the statutory maximum for assault with intent to commit murder.  *See* Mich. Comp. Laws §§ 750.83.  A sentence imposed within the statutory limits is generally not subject to federal habeas review.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

## III.

The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 27, 2018

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 27, 2018.

s/Susan Pinkowski
SUSAN PINKOWSKI

---